IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Case No. GLR-19-0318 |
| JAMES MURRAY | * | |

\* \* \*

**<u>MEMORANDUM AND ORDER</u>**

Pending before the Court is James Murray's ("Defendant") Motion to Appeal an Order of Detention pursuant to 18 U.S.C. § 3145(b). ECF No. 363. The Motion is ripe for disposition. No hearing is necessary.[1] See Local Rule 105.6 (D.Md. 2018). For the foregoing reasons, the Motion will be denied and the Defendant will remain detained. The District Court reviews detention decisions de novo. United States v. Stewart, 19 F. App'x 46, 47 (4th Cir. 2001).

On June 27, 2019, a Federal Grand Jury returned an Indictment charging the Defendant and 18 other members and associates of the Liberty and Garrison ("LNG") criminal enterprise with conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846, and related narcotics and firearms charges. ECF No. 1. On December 19, 2019, the Federal Grand Jury returned a Second Superseding Indictment alleging that the Defendant is subject to a minimum mandatory sentence of ten years incarceration. ECF No. 207. On July 17, 2019, the Defendant made his initial appearance on the original Indictment. On July 18, 2019, United States Magistrate Judge A. David Copperthite held a detention hearing. At the conclusion of the hearing, Judge Copperthite found, by clear and convincing evidence, that no condition, or combination of conditions, would reasonably ensure community safety. ECF No. 60. In reaching this decision, Judge Copperthite considered the nature and circumstances of the offense; the weight of the evidence; the Defendant's

---

[1] The Court acknowledges the Defendant's Supplemental briefing (ECF No. 371) as well as the government's response to the Supplemental briefing (ECF No. 372).

previous criminal history; as well as the Defendant's gang membership. Id. On October 28, 2019, the Defendant moved for reconsideration of the Magistrate Judge's Order of Detention. ECF No. 181. The Court denied the Defendant's Motion. ECF No. 183. On March 27, 2020, the Defendant filed a second Motion for Reconsideration. ECF No. 309. On May 12, 2020, the Defendant filed the present Motion. ECF No. 363.

The Defendant proffers that he suffers from periodic bouts of asthma that make him particularly susceptible to COVID-19 in his current incarceration environment. Indeed, in his supplemental briefing he asserts he has contracted COVID-19 and is/or has undergone medical treatment.[2] He seeks release from the Correctional Treatment Facility ("CTF") in Washington, DC. The Defendant cites the recent findings in Banks v. Booth, Civil Action No. 20-00846-CKK (D.D.C. 2020) in support of his claim given his physical condition and the facility's response to mitigate the spread of COVID-19 when weighed against the other § 3142 factors, present circumstances allowing for his release.

As to the other § 3142 factors, the Defendant argues he is not a risk of flight or danger to the community. As to flight risk, he argues that he is a lifelong resident of Baltimore City, has no passport, and has no personal interests outside of Baltimore City. He offers to remain in the third-party custody of his mother under strict electronic monitoring conditions. As to danger to the community, he asserts he has not been charged with a crime of violence or possession of a firearm. In addition, he asserts there is no direct evidence of his involvement in the conspiracy and only limited monitored phone calls supporting his association with it. However, the Defendant concedes discussing possession of marijuana.

---

[2] The Court is unaware of whether the Defendant is still undergoing treatment for this condition.

Contrary to these representations, the government proffers that intercepted calls demonstrate that the Defendant and others in the conspiracy were responsible for distributing large quantities of heroin, fentanyl, and marijuana. Members also regularly carried firearms in connection with the drug trafficking activities. Indeed, according to the proffer, the Defendant was intercepted attempting to sell a firearm, which law enforcement seized from the Defendant along with narcotics packaged for sale. Further, as to danger, the Defendant, subsequent to his release after his arrest on State charges, resumed engaging with the narcotics conspiracy.

Preliminarily, it is undisputed that there is a rebuttable presumption favoring detention pursuant to 18 U.S.C. § 3142(e).  As to Count 1 alone of the Second Superseding Indictment, the Defendant faces a minimum mandatory sentence of 10 years and a maximum sentence of life imprisonment.

The Court next considers the factors set forth in 3142(g). These factors include:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including— (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Court has carefully considered the decision in Banks, analyzing the current conditions in CTF and the government response to protecting and treating inmates in light of the pandemic. Further, the Court is aware of the injunctive relief ordered to ensure the prison population is protected.[3]

Based upon the record before me, and balancing the risk to the Defendant against other Bail Reform Act factors in the present case, the rebuttable presumption favoring detention has not been overcome and the Court finds by clear and convincing evidence, that no condition, or combination of conditions, would reasonably ensure community safety. While the Court is not unsympathetic to the Defendant's current circumstances, the Court is confident, based upon the pleadings and arguments provided, that he will receive adequate care by the United States Marshal Service, who oversees his pretrial detention.

SO ORDERED this  23rd  day of June 2020.

/s/
_____
George L. Russell, III
United States District Judge

---

[3] Although Judge Kollar-Kotelly of the U.S. District Court for the District of Columbia has concluded that the D.C. Department of Corrections must take additional steps in regard to the COVID-19 pandemic, Judge Kollar-Kotelly has not ordered that all inmates be released. In addition, at least one other judge has noted that because D.C. jail facilities are the subject of Judge Kollar-Kotelly's temporary restraining order, it can be expected that the D.C. Department of Corrections "will do everything it can to comply with that order so as to prevent the further spread of the virus to its residents and staff." United States v. Sagastume-Galicia, No. 20-40 (BAH), 2020 WL 1935555, at *5 (D.D.C. Apr. 22, 2020).